IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

RENARD BRAY,                       )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )   Case No. 06-5014-CV-S-SWH
                                   )
WILLIAM PIPPIN, et al.,            )
                                   )
        Defendants.                )

ORDER

Plaintiff Renard Bray filed a five count Complaint against William Pippin, in his official capacity as the Chief of Police for Seligman, Missouri, and the City of Seligman, seeking damages under 42 U.S.C. § 1983 for alleged violations of plaintiff's constitutional rights as the result of plaintiff's arrest on October 27, 2001. (Doc. # 1) On October 10, 2007, the Court granted the defendants' unopposed motion to dismiss Counts III, IV and V of the Complaint. (Doc. # 16) Of the remaining allegations of the Complaint, Count I seeks damages against defendant Pippin on the basis that the handcuffs defendant Pippin placed plaintiff in following his arrest were too tight. (Doc. # 1 ¶ 11) Count II, against the City of Seligman, alleges that the City is liable for damages caused by defendant Pippin based on the City's failure to adequately instruct, supervise, control and discipline defendant Pippin. (Doc. # 1 ¶ 17)

Defendants now seek summary judgment on the remaining two counts of the Complaint. (Doc. # 41) Defendants allege that Chief Pippin's actions were objectively reasonable as a matter of law, that plaintiff has not established any violation of his constitutional rights by defendant Pippin and that plaintiff cannot establish any alleged violation of his rights arising from a custom or policy

of the City of Seligman.

## I. STANDARDS FOR EVALUATING A MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is granted when the pleadings and evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The nonmoving party may not rest upon allegations or general denials, but must come forward with specific facts to prove that a genuine issue for trial exists. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In doing so, all evidence and inferences therefrom are viewed in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

In opposing defendants' summary judgment motion, plaintiff set forth his contentions, citing to his deposition testimony, but did not specifically controvert the undisputed facts set forth in defendants' motion. (See Doc. # 45) Local Rule 56.1(a) provides, in part:

> Suggestions in opposition to a motion for summary judgment shall begin with a section that contains a concise listing of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be set forth in a separate paragraph, shall refer specifically to those portions of the record upon which the opposing party relies, and, if applicable, shall state the paragraph number in movant's listing of facts that is disputed. All facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party.

In response to plaintiff's opposition to the summary judgment motion, defendants filed further suggestions pointing out plaintiff's failure to comply with Local Rule 56.1(a) and argued that given plaintiff's response, defendants' undisputed facts should be deemed admitted. (See Doc. # 46) In response, plaintiff filed further suggestions admitting and controverting defendants' undisputed facts as required by Local Rule 56.1. (See Doc. # 51) After reviewing the pleadings, the Court finds the

2

following facts are undisputed.

## II. UNDISPUTED MATERIAL FACTS

1. On October 27, 2001, defendant Pippin stopped and cited plaintiff for speeding in Seligman, Missouri. (Defendant's Uncontroverted Statement of Fact (hereinafter DSOF) #6)

    Plaintiff denies that he was speeding and claims that the stop was a pretext for defendant Pippin to solicit a bribe. Plaintiff further claims that Pippin smelled of alcohol.

2. During the traffic stop, defendant Pippin conducted a routine search for outstanding warrants regarding plaintiff. The search revealed that there was an outstanding warrant from Newton County, Missouri for plaintiff's arrest. (DSOF #7 and #8)

3. Defendant Pippin then placed plaintiff under arrest, handcuffed plaintiff and transported him to the Barry County Jail.[1] (DSOF #9)

4. Barry County jail procedures require that when an arrestee is "booked," an Arrest/Booking Report is generated. In this case, an Arrest/Booking Report was generated by personnel when plaintiff was booked. The Arrest/Booking Report contains a notation "N" under "Skin Marks" and "N" under " Trauma or Illness" in the Medical Questionnaire portion of the Report. The "N" notation indicates that there were no visible marks on plaintiff's skin at the time of his booking. (DSOF ## 10-14)

5. Plaintiff pled guilty to an amended charge of defective equipment relating to the speeding ticket he received on October 27, 2001. (DSOF #15)

    Plaintiff admits he pled guilty to the charge of defective equipment, but denies that he was speeding.

## III. DISCUSSION

Defendants argue that summary judgment is appropriate because plaintiff cannot establish

---

[1] The factual references provided by defendants support this fact. Despite the fact that plaintiff now claims he was placed under arrest prior to the discovery of the outstanding warrant, plaintiff's deposition testimony supports the fact that he was arrested after the discovery of the outstanding warrant. (See Deposition of Renard Bray, doc. #42-2 at p. 14, lines 5-13 and p. 15, lines 1-6)

3

any violation of his constitutional rights. For the following reasons, the Court concludes that defendants are entitled to summary judgment.

### A.  Count I–Constitutional Violations by Defendant Pippin

Plaintiff claims there are disputed facts which render summary judgment inappropriate. For example, plaintiff disputes that he was speeding, contending that he was stopped only so that Pippin could solicit a bribe. (See Doc. # 45)  To prevail on his claim of excessive force, it is not necessary that plaintiff prove that his initial stop was without probable cause. Thus, it is unclear if plaintiff is also asserting a cause of action under section 1983 for an allegedly unlawful traffic stop.

If plaintiff is attempting to assert a cause of action for an unconstitutional stop, it is undisputed that following plaintiff's arrest, he pled guilty to an amended charge of defective equipment in lieu of the speeding ticket. (Court's Undisputed Fact # 5)  Plaintiff's guilty plea is an acknowledgment that the traffic stop was proper and not lacking in probable cause,[2] and thus, he is now estopped from claiming otherwise. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Even assuming that following plaintiff's stop defendant Pippin solicited a bribe, this fact does not controvert the finding that the stop was lawful.[3]  If plaintiff is claiming that because the stop was without probable cause any arrest was unlawful and thus involved excessive force, this claim must also fail for the reasons set forth above.

---

[2] Even a minor traffic violation provides probable cause for a traffic stop. See United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007); United States v. Gregory, 302 F.3d 805, 809 (8th Cir. 2002), cert. denied, 538 U.S. 992 (2003); United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000).

[3] Even where an unlawful motive underlies a decision, if the same decision would have been made in the absence of the unlawful motive, there is no constitutional violation. See Brown v. Rogers, 1990 WL 11657 (E.D. Pa. 1990)(citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).

To the extent plaintiff's claim is that the force used to effect his lawful arrest pursuant to the warrant was excessive, defendants are also entitled to summary judgment. It is undisputed that plaintiff was arrested for having an outstanding warrant in Newton County. (Court's Undisputed Fact # 2) As the Supreme Court has recognized, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). The degree of physical coercion that law enforcement officers may use is not unlimited. Claims that law enforcement officers have used excessive force must be analyzed under a Fourth Amendment reasonableness standard. Id. at 395. See Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir.2003)(force employed is not excessive if it was objectively reasonable under the particular circumstances). "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir.1990).

The undisputed facts of this case reflect that plaintiff was arrested on a warrant and handcuffed prior to being transported to the Barry County Jail where he was released on bond. Attached to the summary judgment motion is plaintiff's deposition testimony. In his deposition, plaintiff described in detail the circumstances of his arrest. According to plaintiff, after he was pulled over on the side of the road, defendant Pippin called in plaintiff's driver's license to see if he had any warrants. (Doc. # 42-2 at 6, Depo. at 14, lines 4-10) Plaintiff was then told he was under arrest and should drive to the nearby truck stop with the officer following him. (Doc. # 42-2 at 6-7, Depo. at 15, lines 7-12; Depo. at 19, lines 1-10) At the truck stop, Pippin saw that plaintiff had a dog in the vehicle and asked what to do about the dog. (Doc. # 42-2 at 7, Depo. at 20, lines 11-14)

5

Plaintiff was then allowed to call his brother on a cell phone and allowed to request that his brother come to the truck stop to get plaintiff's dog and to follow plaintiff and Chief Pippin to the jail so that he could post bail. (Doc. # 42-2 at 7-8; Depo. at 20, line15, to page 22, line 22) It took plaintiff's brother more than ten minutes to reach the truck stop. (Doc. # 42-2 at 8; Depo. at 23, lines 6-14) While plaintiff and defendant Pippin waited for plaintiff's brother to arrive, plaintiff was told to get out of his vehicle; plaintiff was cuffed and put in the police car. (Doc. # 42-2 at 8; Depo. at 23, lines 20-23; Depo. at 24, lines 1-11)

In light of these facts, the Court concludes that no reasonable jury could find that defendant Pippin, who was at the scene by himself, used excessive force in handcuffing plaintiff while he waited for the arrival of plaintiff's brother and prepared to transport plaintiff to the Barry County Jail. A police officer may take reasonable steps to protect his personal safety. Plaintiff has cited no authority that would suggest that merely because a party is cooperative during an arrest, an officer is constitutionally prohibited from handcuffing the arrestee immediately prior to and during the process of transporting the person to jail.

Plaintiff also claims that the handcuffs were intentionally tightened to cause him pain and injury. The evidence presented by defendants was that upon plaintiff's arrival at the jail there were no marks on his skin and no evidence of trauma. (Court's Undisputed Fact # 4) In opposing summary judgment, plaintiff did not present any medical records indicating he has suffered any long-term or permanent physical injury as a result of the handcuffs. Rather, plaintiff attempted to controvert the evidence offered by defendant by stating that when the handcuffs were placed upon his wrists, he felt immediate pain and numbness in his wrists and hands which continues to this date.

6

(Doc. # 51 at 2)[4]

In Foster v. Metropolitan Airports Commission, 914 F.2d 1076, 1082 (8th Cir. 1990), the Eighth Circuit stated that allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are insufficient to support a claim of excessive force. In Foster, the court concluded that a claim of nerve damage resulting from being handcuffed too tightly was not tantamount to excessive force in the absence of "medical records indicating ... any long-term injury as a result of the handcuffs." Id. A similar conclusion was reached in Crumley v. City of St. Paul, 324 F.3d 1003 (8th Cir. 2003), when the Eighth Circuit evaluated another claim of injury due to excessive force:

> In addition to the circumstances surrounding the use of force, we may also consider the result of the force. Foster, 914 F.2d at 1082 ("We do not believe that ... allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are sufficient to support [a] claim of excessive force"); Greiner, 27 F.3d at 1355 (reasoning the lack, or minor degree, of any injury is also relevant in determining the reasonableness of the force used to effect an arrest, and holding the district court correctly held officers were protected from the plaintiffs' § 1983 claims by the doctrine of qualified immunity).
>
> * * *
>
> *Foster* instructs us, therefore, that for the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries. *Id.* We are not alone in this conclusion. See Rodriguez v. Farrell, 280 F.3d 1341, 1352 (11th Cir. 2002)(stating "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal."); Nolin v. Isbell, 207 F.3d 1253, 1257-58 (11th Cir. 2000)(holding as a matter of law the amount of force used during an arrest

---

[4] Plaintiff was also questioned during his deposition about information in his medical records. For example, plaintiff indicated that he was diagnosed with diabetes ten years ago and is insulin dependent. (Doc. # 42-2 at 18; Depo. at 63, lines 5-20) He acknowledged that his medical records indicate that his diabetes control has been assessed as "poor." (Doc. # 42-2 at 21; Depo. at 75, lines 7-21) Over objection from his counsel, plaintiff read a notation in his medical records from Dr. Flanary at the VA, plaintiff's treating physician, that indicated Dr. Flanary would not write a letter stating that the pain in plaintiff's hands was not due to diabetes. (Doc. # 42-2 at 20; Depo. at 72, lines 2-20)

to handcuff a suspect was not excessive and would not defeat an officer's qualified immunity where the resulting injury was merely bruising). Cf. Martin v. Gentile, 849 F.2d 863, 869-70 (4th Cir. 1988)(concluding, as matter of law, painful handcuffing of one resisting arrest that resulted in scrapes and bruises was not a constitutional violation).

324 F.3d at 1007-08. The lack of any evidence of long term injury, beyond plaintiff's complaints of pain, prevents plaintiff from prevailing on his claim that the use of handcuffs constituted excessive force in violation of the Constitution. Thus, defendants are entitled to summary judgment on Count I of plaintiff's Complaint.

B. Count II–Constitutional Violations by the City of Seligman

Plaintiff claims that defendant City of Seligman, acting pursuant to an official policy or custom, failed to instruct, supervise, control and discipline defendant Pippin. As discussed above, plaintiff failed to prove that defendant Pippin violated plaintiff's constitutional rights. Thus, any claim that the City failed to take steps to prevent Pippin from violating the plaintiff's constitutional rights must also fail. However, even if defendant Pippin had violated plaintiff's constitutional rights, on the basis of the present record, the City would still be entitled to summary judgment.

Plaintiff claims that "[t]he official policy of Seligman is shown by the statements of the Mayor of the City acknowledging that Pippin had in [the] course of his official duties appeared drunk [at a meeting] and that the City was planning to fire him." (Doc. 45 at 2)[5] Assuming that defendant Pippin appeared at a meeting drunk, that fact alone does not support a claim that the City failed to adequately train Pippin.

---

[5]Plaintiff's pleading did not set forth in separately numbered paragraphs the facts that plaintiff contends are undisputed as required by Local Rule 56.1(a). However, plaintiff did cite to his deposition where he testified that the Mayor of Seligman approached plaintiff after his arrest and told him that "Pippin was going to be fired for coming to a meeting drunk with his girlfriend ..." (See Doc. 45 at 2)

8

### 1. Inadequate Training and Supervision

In order for the City to be found liable for inadequate training or supervision of defendant Pippin, plaintiff must demonstrate: (1) the City received notice of a pattern of unconstitutional acts committed by defendant Pippin; (2) the City's deliberate indifference to or tacit authorization of the offensive acts; (3) the City's failure to take sufficient remedial action to train or supervise the offending subordinate; and (4) such failure proximately caused injury to plaintiff. See Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997); Owl v. Robertson, 79 F.Supp.2d 1104, 1114 (D. Neb. 2000). Plaintiff has neither pled nor offered evidence that the City received notice of a pattern of unconstitutional acts committed by defendant Pippin.

### 2. Custom and Practice

A plaintiff may establish municipal liability under 42 U.S.C. §1983 if the plaintiff demonstrates that his constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct among non-policymaking employees so pervasive "as to constitute a 'custom or usage' with the force of law." Ware v. Jackson County, Mo., 150 F.3d 873, 880 (8th Cir. 1998) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Custom or usage is demonstrated by (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking official after notice to the officials of that misconduct; and (3) proof that the custom was the moving force behind the constitutional violation. Id. Again, no evidence of any of the required elements for a claim of

9

liability based on an official custom or practice has been presented.[6]  Thus, defendants are also entitled to summary judgment on Count II of the Complaint.

## IV.  CONCLUSION

For the reasons discussed herein, it is

ORDERED that Defendants' Motion for Summary Judgment (doc. #41) is granted.

                                         /s/ Sarah W. Hays
                                         SARAH W. HAYS
                              UNITED STATES MAGISTRATE JUDGE

---

[6] If plaintiff is correct that the City planned to fire Pippin for his conduct at a meeting, that fact is contrary to any claim that the City was deliberately indifferent to Pippin's conduct.